KENNETH E. SEEGER AND ANOTHER v.
LAWRENCE KENNETH DALTON.

172 N. W. (2d) 563.

November 28, 1969—No. 41235.

*Rolf O. Slen* and *Christian, Slen, Savelkoul, Johnson & Broberg,* for appellants.

*William R. Sturtz* and *Sturtz, Peterson, Sturtz & Butler,* for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Sheran, and Graff, JJ.

OTIS, JUSTICE.

This is an action to recover damages for personal injuries sustained by plaintiff Genevieve N. Seeger when a vehicle which she was driving collided in an intersection with one driven by defendant, Lawrence Dalton. The jury awarded Mrs. Seeger $5,000 and her husband $1,000 in his derivative action. Plaintiffs appeal from a judgment n. o. v. granted by the trial court.

Defendant did not take the stand and introduced no evidence. Hence the testimony of Mrs. Seeger is uncontroverted. The question is whether her version of the accident supports the verdicts.

On March 13, 1962, at about 2 p. m., Mrs. Seeger was driving her vehicle in a westerly direction on Third Street in the city of Albert Lea, and defendant Dalton was proceeding in a southerly direction on James Avenue. Mrs. Seeger testified that she stopped at the crosswalk before entering James but her visibility to her right was blocked by snowbanks at the corner of the intersection. She edged out slowly into the intersection, leaning forward against the steering wheel, and for the first time saw defendant when he was near two trees which were about 122 feet north of the intersection. She was then 5 or 6 feet from the east curb line of James, "jumping" into the intersection, as she described it. "Well, you don't have the brake on, but still you are kind of jumping." She then turned her wheel to the left and was struck on the right-front corner of her automobile when it was at a point approximately halfway across the 30-foot street.

Although Mrs. Seeger could not estimate defendant's speed when she first saw him, she said the Dalton car "was going a good clip, fairly good clip." The condition of the street "was real icy."

In this state of the record, the trial court permitted the case to go to the jury but granted judgment for defendant notwithstanding the verdicts for plaintiffs without specifying the reason. However, we infer that the court was of the opinion Mrs. Seeger was guilty of contributory negligence as a matter of law. In his charge, the court stated that defendant had the right-of-way but left to the jury the question of whether he forfeited it by traveling at an unreasonable speed. In discussing defendant's motion for a directed verdict, the court indicated that plaintiff "didn't see what was obviously in sight" and observed, "You got a situation where the other fellow has the right-of-way don't you? How are you going to get around that?"

The statute which governs the right-of-way at uncontrolled intersections provides as follows (Minn. St. 169.20, subd. 1):

"When two vehicles enter an uncontrolled intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right.

"The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder.

\* \* \* \* \*"

Ordinarily, the issue of right-of-way is for the jury and only in extraordinary situations should the trial court determine negligence or contributory negligence in intersection accidents of this kind. The question here is extremely close. It is with some hesitation that we affirm. Nevertheless, we are of the opinion that the trial court was justified in holding as a matter of law that plaintiff was guilty of contributory negligence.

Under the statute, defendant had the directional right-of-way, and it was the duty of plaintiff to keep a proper lookout for

traffic coming from her right. Making an observation at a time, place, and speed that does not permit the driver to stop and yield the right-of-way is as hazardous as making no observation at all. By her own testimony, Mrs. Seeger knew she could not observe oncoming traffic until she was beyond the curb line and she realized that the streets were, as she put it, "real icy." While the jury could find that defendant was negligent in failing to keep his vehicle under proper control, plaintiff had a duty to maintain a proper lookout and proceed at a speed which would permit her to avoid a collision with cars approaching from the right under the icy conditions which existed.

Plaintiff cites as authority for reinstating the verdicts Jeddeloh v. Hockenhull, 219 Minn. 541, 18 N. W. (2d) 582; Johnson v. Mancilman, 241 Minn. 461, 63 N. W. (2d) 569; and Jablinske v. Eckstrom, 247 Minn. 140, 76 N. W. (2d) 654. Although there are factual similarities in the Jeddeloh case, no two situations are identical in collisions of this kind. The plaintiff there had apparently progressed well across the intersection when he was struck on the rear right of his car. He testified that he was unaware of the speed of the other vehicle. In the Johnson case, the court noted that plaintiff's failure to yield the right-of-way could be excused because his vision was distracted or obscured by blowing gusts of falling snow not ordinarily encountered. The Jablinske case is distinguishable since plaintiff there had the directional right-of-way.

While we would be better satisfied if there had been a new trial, defendant has not sought review, and the regrettable delay in securing an adjudication which has occurred since the time of the accident deters us from granting that relief on our own initiative.[1] Consequently, we affirm. No costs shall be allowed either party.

Affirmed.

---

[1] The accident occurred in March 1962. The action was commenced in August 1963. The trial began in January 1964. Judgment was entered in October 1967, and this appeal was argued in November 1969.